22388.   COBB *v.* ATLANTA COACH COMPANY.

DECIDED MARCH 3, 1933.

*S. Holderness, J. Caleb Clarke, A. E. Wilson,* for plaintiff.
*Bryan, Middlebrooks & Carter, Chauncey Middlebrooks,* for defendant.

MACINTYRE, J.   Mrs. Betty R. Cobb brought suit against Atlanta Coach Company.   The United States Fidelity and Guaranty Company had insured the defendant against liability.   We quote from the bill of exceptions, "that upon the call of the case counsel

for the plaintiff then and there moved the court that the jury be qualified by purging the panel of any and all persons who were employees of, stockholders in, or related to employees of or stockholders in the United States Fidelity and Guaranty Co., which said company carried the liability insurance on the said defendant, agreeing for a money consideration to be responsible for damages sustained in accordance with the provisions of the policy; which motion to thus purge the jury and to qualify said jury the court overruled, and denied counsel the right to purge the said jury, or to inquire into the question of the relation of any of the prospective jurors to the employees of or stockholders in the said United States Fidelity and Guaranty Co." The controlling question presented by the record is whether the judge committed error in overruling the timely motion to purge the jury.

In *Bibb Mfg. Co.* v. *Williams,* 36 *Ga. App.* 605, 607 (137 S. E. 636), Judge Jenkins, speaking for this court, said: "Where it appears that the defendant is in fact insured against liability, the employees, stockholders, and relatives of stockholders of the insurance carrier are disqualified to serve as jurors in the case; and in such a case it is not error for the court, at the request of the plaintiff and over the objection of the defendant, to purge the jury by inquiring whether any juror is an employee or stockholder of, or related to a stockholder of, the insurance company." In *Farrar* v. *Farrar,* 41 *Ga. App.* 120 (152 S. E. 278), Judge Jenkins said: "In a suit for personal injuries, where it was made to appear to the court, on private inquiry conducted out of the hearing of the jury, that the defendant was protected by liability insurance, and that the insurance carrier was thus pecuniarily interested in the result of the suit, and no proof was submitted on behalf of either party to show whether an employee or a stockholder or relative of a stockholder of the insurance carrier was on the jury, it can not be said as a matter of law that a request of the plaintiff to purge the jury with reference to the insurance carrier was submitted in bad faith and solely for the purpose of informing the jury that the defendant was protected by liability insurance." Applying the above authorities to the facts of this case, it seems to us that the court committed error in refusing to purge the jury upon proper motion made.

The next question is, was this reversible error? Generally speaking, there may be a challenge to the array or a challenge to the poll.

The former goes to the form and manner of making up the panel, without regard to the objection to the individual jurors who compose it; while "the challenge to the poll is directed solely to an objection which is inherent in the individual juror." *Rawlins* v. *State*, 124 *Ga.* 31, 48 (52 S. E. 1). A challenge to the poll because of the incompetency of the juror is subdivided into (1) a principal challenge, and (2) a challenge for favor. A principal challenge is based upon alleged facts from which, if proven to be true, incapacity to serve is conclusively presumed. A challenge to favor is based upon circumstances raising a suspicion of the existence of actual bias in the mind of the juror for or against a party, as for undue influence or prejudice. *Turner* v. *State*, 114 *Ga.* 421, 423 (40 S. E. 308). The motion in this case to purge the jury on account of relationship and interest was a principal challenge to the poll; and if upon such a challenge a juror is found to be related within the prohibited degree, or is an employee or stockholder, the challenge can not be overruled. The juror would be incompetent per se; it would be a legal presumption. We think the plaintiff had the right to have the question of the disqualification of the jurors tried and settled in the manner fixed by law, before she should be required to go to the jury. It was fatal error to fail to do so. We can not say that the error was harmless because, on the motion for a new trial, the defendant introduced ex parte affidavits from all the twenty-four jurors on the list stating that they were not disqualified because of relationship and interest, and also ex parte affidavits from officers and employees of the insurance carrier to the same effect. The proper time for the qualification of the jurors to have appeared was before the actual trial of the case was entered upon. When, on proper motion, the plaintiff was denied this right to have the jurors sworn and be confronted by the witnesses [jurors] on the question of relationship and interest, and to have the court examine the witnesses [jurors] upon said question, or to permit his counsel to do so, the court erred; for after the jury was selected and sworn, the main case tried, the verdict rendered, and the jury discharged, this vital legal right was forever gone, since the juror is not permitted to impeach his verdict, notwithstanding the rule that he may make affidavits to sustain it. The motion in this case was "substantially a motion to challenge each and all of said jurors, and to prove their incompetency by themselves, and should have been granted."

*Bryan* v. *Moncrief Furnace Co.,* 168 *Ga.* 825, 829 (149 S. E. 193). The defendant in the case at bar was a corporation, in all probability with many stockholders and employees; and it seems to us that it would be unwise in a case like this to require the plaintiff to make an onerous and expensive investigation of the relationship of the jurors, in order to ascertain that she had obtained her legal rights, when the law lays down an easy and inexpensive method for her to obtain the same results.

In *Bryan* v. *Moncrief Furnace Co.,* supra, *Howell* v. *Howell,* 59 *Ga.* 148, and *Justices* v. *Griffin & West Point Plank Road Co.,* 15 *Ga.* 39, 41, there was a proper challenge made to the poll in such a way as to challenge all the jurors, and each particular one of the twenty-four jurors on the panel, just as if each juror had been challenged separately; and in those cases the court held that the denial of the right to have the list purged was such error as demanded the grant of a new trial.

There is another class of cases where the challenge to certain jurors was improperly overruled, and where the number of jurors challenged was not more than the challenging parties' peremptory challenges (strikes), and where the challenged jurors were stricken by the challenging parties. In these cases the Georgia courts have generally held that "the parties had got rid of the objectionable jurors, and therefore no harm was done in erroneously putting upon them a disqualified juror, unless it was shown that in striking such disqualified juror and others they had exhausted their peremptory challenges before the jury was selected." *Bryan* v. *Moncrief Furnace Co.,* supra. To this latter class of cases belong *Ethridge* v. *State,* 163 *Ga.* 186 (136 S. E. 72) ; *Faulkner* v. *State,* 166 *Ga.* 645 (144 S. E. 193) ; *Ford* v. *State,* 12 *Ga. App.* 228 (76 S. E. 1079).

It is obvious that if the plaintiff in the instant case used all of her six strikes, she would still be forced to try her case before twelve jurors, all of whom she had challenged for principal cause (a cause which, if found to be true, would disqualify the jurors trying her case as a matter of law), notwithstanding the fact that she had taken the steps pointed out by the law to have the entire jury sworn to prove their incompetency by the jurors themselves. If the jurors had been sworn and had admitted their incompetency, they would have been disqualified as a matter of law, and there would be no issue of fact. The plaintiff was not challenging for favor (which would

make the judge a trior of conflicting evidence), where his finding of fact would be final and conclusive. *Turner* v. *State,* supra.

In *McTier* v. *Crosby,* 120 *Ga.* 878 (48 S. E. 355), cited by the defendant, the record of file shows that the suit was brought on a bastardy bond for the use of the bastard, and that the defendant "asked that the relatives of the ordinary be taken off the jury." The trial court held that the relatives of the ordinary were not disqualified; and the judgment was affirmed by the Supreme Court. It seems to us that in this case the ordinary was acting solely as a public official, and within the scope of his official duty. Hence his relatives were not disqualified.

The cases cited by the defendant—*Carter* v. *State,* 106 *Ga.* 372 (6) (32 S. E. 345, 71 Am. St. R. 262), and *Dees* v. *State,* 41 *Ga. App.* 321 (152 S. E. 913)—may be out of line with *Bryan* v. *Moncrief Furnace Co., Howell* v. *Howell,* and *Justices* v. *Griffin &c. Plank Road Co.,* supra. However, it will be noted that the last mentioned are the earliest and the latest decisions of the Supreme Court bearing upon the particular question under consideration. Hence we follow them. It is therefore our opinion that the denial of this plain right of the plaintiff to have the jury list purged as requested on her principal challenge to the poll (in contradistinction to challenge for favor) of the employees, stockholders of the corporation, and their relatives, entitles the plaintiff to a new trial; and that the burden did not rest upon the plaintiff to show that some of the members of the jury actually trying the case were so disqualified. Having reached the conclusion that the trial judge committed error in the respect indicated, further proceedings in the case after the error pointed out were nugatory.

*Judgment reversed. Sutton and Guerry, JJ., concur.*